### ROSSI ET AL. *v.* MEWSHAW ET AL.

[No. 162, October Term, 1949.]

324

*Decided May 11, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Alvin L. Klupt* for the appellants.

*Milton Leven* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

John A. Rossi and Frank Rossi are the owners and operators of a bus business known as Harford Motor

Coach Company. Since the inception of the business in 1941 they have used an advertising slogan "Ride the Rite Way", which in 1947 was registered among the agency records of the Superior Court of Baltimore City. In 1946 the appellants entered into certain charter arrangements with the appellees, whereby the latter were permitted to use the slogan on their buses. Upon the termination of the charter, the appellees agreed to discontinue use of the slogan, but did not do so. On February 13, 1948, the appellants filed a bill of complaint, praying an injunction against the use of the slogan by the appellees, damages for the "infringement" and an accounting for all gains or profits derived from the "wrongful action". After answer and hearing, the Chancellor, on August 19, 1949, entered a decree enjoining the use of the slogan and referring the matter to an auditor "to determine what, if any, damages have been sustained." The complainants did not appeal from that decree. The appellees noted an appeal, but this was not perfected.

At the hearing before the auditor the appellants sought to require the appellees to produce their books and records, including a list of customers and their income tax returns. The appellees declined to do so and the hearing was adjourned pending a determination on the point by the Chancellor. The Chancellor suggested that the appellants submit a list of their customers to the appellees and that the appellees disclose the names of any customers of theirs who were also customers of the appellants. It does not appear that any objection was taken to this suggestion and it was adopted. At a further hearing before the auditor William Mewshaw testified that only one customer on the appellants' list, a Mrs. Poehlman, was a customer of the appellees. Mrs. Poehlman had testified in the original hearing. Counsel for the appellants then sought to interrogate the witness as to their dealings with Calvert Motor Coach Company, a codefendant in the original bill, as to whom the bill

had been dismissed by the Chancellor on the ground that it had never carried the slogan on its buses. The appellees objected to the line of questioning on the ground that that company was a competitor, not a customer. The witness admitted having business relations with the company, but could not state the dollar volume of that business. After a lengthy colloquy the hearing was again adjourned. Thereafter, a further hearing was had before the Chancellor, at which the testimony before the auditor was produced. On October 17, 1949 the Chancellor passed an order that "no damages having been proven", no damages be allowed. The appeal here is from that order.

The contention of the appellants seems to be that they are entitled to an accounting for profits without proof of actual deception; that profits of the appellees during the whole period the slogan was in use is the proper measure of damages. We find no merit in this contention.

While there is a recognized distinction between profits and damages, a loose use of the terms has led to some confusion in the cases. Nims, Unfair Competition & Trade-Marks, (4th Ed.) § 419 p. 1328. In the instant case, however, there is no room for misunderstanding the exact scope of the decree of August 16, 1949. The Chancellor, in his oral opinion, said:

"As to profits, what proof have we of any profits in this case that were earned through the use of the slogan? I will be glad to hear what they are. I do not know. I have had no direct proof of what they might be, and I do not know. If there is any substance to them, if they are substantial, I would be very glad to refer the case to an auditor to state an account and ascertain what the profits are. I could not determine from the testimony in this case at all. I am rather inclined to believe that there should not be any profits allowed, and my viewpoint on it is this: I am perfectly satisfied from the testimony that the Mewshaws started rightfully to use this slogan, that is, they started out when they had their working agreement with the Rossi Brothers, and the

difficulty is that they continued to use it after Rossi Brothers had severed their connections with them, or they had severed their connections with Rossi Brothers, which I believe is the way it happened. So that when you come around to profits, it would be only such profits as accrued after the severance of the relationships. There is no testimony here that anybody hired any of the Mewshaw busses because they used the phrase, 'Ride the Rite Way'. As a matter of fact, one of the ladies they had on the stand testified it had nothing whatever to do with the fact she hired the busses. She testified she really hired them because she wanted Gentry as the driver. He might be an extraordinarily courteous man, or something of that kind, and she wanted that bus for that reason. I think Mrs. Poehlman testified it did not make any difference to her, and I can not find in the case any direct proof of any one who actually went into a motor bus of the Mewshaw Brothers on the theory they were dealing with Rossi.

"I am inclined to believe there was no testimony going to the damages sufficiently definite to enable the Court to find out there were such.

\* \* \* \* \*

"(Mr. Klupt) If your Honor please, we deliberately omitted the damage question because of the conference in your Honor's chambers in which you stated that you would not do any accounting. I would like your Honor to refer it to an auditor.

"(The Court) If you want it referred to an auditor to state an account, I will refer it to an auditor, but you will have to produce some testimony before the auditor showing actual monetary loss or damage. \* \* \*

"I will give you a decree which will allow you to take testimony before an auditor to determine what damages, if any, there might be as the result of the wrongful use of this slogan, 'Ride the Rite Way' ".

The appellants did not appeal from the decree and accepted the limitations implicit in it as the law of the

case. They were not at liberty to inquire into profits of the appellees' business unrelated to the wrongful use. They were confined to actual monetary loss sustained by a diversion of customers who were deceived by the slogan into believing they were dealing with the appellants rather the appellees. We need not decide whether the Chancellor's opinion was a correct statement of the Maryland law, or whether the complainants under other circumstances might have been entitled to "recover the defendant's profits even in the absence of evidence of actual loss or damage." *Coca-Cola Co. v. Dixi-Cola Lab.,* (C. C. A. 4th, 1946), 155 F. 2d 59, 67, *certiorari* denied 329 U. S. 773, 67 S. Ct. 192, 91 L. Ed. 665. We may point out, however, that in the case cited there was clear proof of public deception and confusion in the palming off of an indistinguishable beverage. Proof of deception is wholly lacking in the instant case.

The case of *W. G. Reardon Laboratories v. B. & B. Exterminators,* D. C., 3 F. Supp. 467, 476, appears to be closely in point. In that case, after granting an injunction against the use of deceptive containers of "Mouse Seed", as unfair competition due to a possibility of confusion, Judge Chesnut said: "Plaintiff's bill asks for an accounting of damages and for profits and its counsel asks for a reference of the cause to a master to take the accounting * * *. In this class of cases 'a decree for damages or profits does not necessarily follow an injunction.' Nims on Unfair Competition and Trade Marks (3d Ed.) § 424. I am not satisfied that conditions here existing require or justify an accounting either for profits or damages. There is no substantial evidence in the case that customers have in fact been deceived or that the defendant has realized profits from deceptive sales or that the plaintiff has sustained any actual damage by the defendant's competition. The burden to prove this was on the plaintiff. *Ammon & Person v. Narragansett Dairy Co.,* 1 Cir., 262 F. 880, 884." Although on appeal the appellate court took the view that the descriptive words had become a trade-mark or trade-name, the decision on

330

the point of damages was affirmed. *W. G. Reardon Laboratories v. B. & B. Exterminators,* 4 Cir., 71 F. 2d 515.

Since there was no proof of damages sustained within the limitations set by the prior decree, the order appealed from must be affirmed.

*Order affirmed, with costs.*